## Thomas H. Cheney v. James H. Field.

1. CROSS-EXAMINATION—*what improper upon.* It is improper upon cross-examination to undertake to elicit evidence which does not pertain to the subject-matter of the direct examination and which should properly be introduced as a part of the examiner's own case.

2. INSTRUCTION—*when, will not reverse.* An instruction, though erroneous, will not reverse when it is perfectly clear that the jury in arriving at the amount of the verdict disregarded such instruction.

Action of assumpsit. Error to the County Court of Sangamon County; the Hon. GEORGE W. MURRAY, Judge, presiding. Heard in this court at the November term, 1903. Affirmed. Opinion filed June 28, 1904.

PERRY & MORGAN and GEORGE A. WOOD, for plaintiff in error.

WALTER EDEN, for defendant in error.

MR. JUSTICE GEST delivered the opinion of the court.

Field, the plaintiff below, brought suit upon the following written instrument:

"SPRINGFIELD, ILL., February 16, 1902.

This agreement between Thomas H. Cheney and J. H. Field, both of Springfield, Illinois, witnesseth: That said Field agrees to use his best efforts to secure customers for Kansas farm and ranch lands and turn over to said Thomas H. Cheney to close the deal with them according to the contract of said Thomas H. Cheney with Temple & Reeve, of Wichita, Kansas. The said sales made to parties so furnished by said Field for half of all commissions received by said Cheney on sales made to parties so furnished by said Field for Kansas lands. Said commission to be due and payable to said Field immediately upon the collection of the same by said Thomas H. Cheney.

THOMAS H. CHENEY,
Local Agent, Temple & Reeve."

The declaration as amended contained two special counts and the consolidated common counts. The defendant demurred generally to the amended declaration and each count thereof. The demurrer was overruled and the defendant pleaded the general issue. Upon the trial, at the conclusion of the plaintiff's evidence, the defendant by leave of the court filed a special plea setting up in substance that at the time when the said contract was entered into between plaintiff and defendant, and ever since, the plaintiff was a real estate broker and that in the execution and performance of said contract plaintiff was acting as and pursuing the business of a real estate broker in the city of Springfield, and that by ordinance of said city a real estate broker therein was required to have a license and that plaintiff had no license. The plaintiff demurred generally to the plea and the court sustained the demurrer. At the conclusion of plaintiff's evidence and again at the conclusion of all the evidence the defendant moved the

Cheney v. Field.

court to instruct the jury to find for the defendant, but the court overruled the motion. The jury returned a'verdict for the plaintiff in the sum of $227.25, and the court after overruling defendant's motion for a new trial entered judgment for plaintiff for that sum.

The first error assigned is that the court admitted improper evidence on the part of plaintiff. Counsel have not pointed out to us any instance where that is claimed to have been done. The second, fourth and fifth errors assigned are the court's refusal to instruct for the defendant at the conclusion of plaintiff's evidence and of all the evidence. It is sufficient to say that there was evidence tending to prove the plaintiff's case. The third assignment of error is the court's refusal to admit proper evidence offered by defendant. A witness, McLoud, was called by plaintiff, who testified that he went in behalf of the defendant to Kansas with the persons whom plaintiff had brought to the defendant as prospective buyers of land from or through the defendant and who in fact did so buy. On cross-examination defendant sought to prove by the witness what the defendant's expenses were in securing these customers and objection to such inquiry was sustained. The defendant had a contract in writing with Temple & Reeve, of Wichita, Kansas, under which he undertook to solicit customers for southern Kansas lands in central Illinois, he having all expenses of doing so, and to turn said customers over to Temple & Reeve to sell to, and under which Temple & Reeve were to pay to defendant "a commission of one dollar per acre on all cash sales made by Temple & Reeve to customers furnished by Cheney." The defendant offered this contract in evidence and the court on objection refused to admit it.

These are the only matters complained of by defendant under this assignment of errors. As to the first, the cross-examination of McLoud, it is manifest that it was not legitimate cross-examination. If the defendant was entitled to prove his expenses in and about the business it was as a part of his defense, as independent proof by him. The matter

he sought to prove by this cross-examination was entirely foreign to the examination in chief, and yet subsequently in the course of the cross-examination the defendant obtained from the witness the statement that the defendant's expenses on that account were at least $170. The defendant himself was afterwards a witness in his own behalf, but no attempt was made to prove the matter of expenses by him nor by any other witness. The cross-examination ·of Mc-Loud was improper, and therefore the defendant had no just ground of complaint; the cross-examination was persisted in and the answers desired were obtained, and therefore the defendant has no ground of complaint. As to the second matter complained of it is difficult to see the ground of complaint. There is nothing in that contract that affects the plaintiff except the provision that Cheney was to receive one dollar per acre, and that is certainly for plaintiff's benefit. There is nothing in it that would be of any benefit to defendant in his suit with this plaintiff. It was entirely irrelevant.

The court gave one instruction for plaintiff; the giving of that instruction is the sixth error assigned. That instruction in substance states that if the proof shows that plaintiff was the means of defendant's procuring the customers for the lands and that defendant closed the deals with them and received commission therefor, the plaintiff was entitled to receive from defendant one-half of such commission, less such sums as had been paid to him thereon. The objection made to the instruction is the use of the phrase "one half of such commission." We see no objection to it on that ground. The agreement between plaintiff and defendant was in writing. It is not attempted to be shown that it does not contain their entire agreement, and it in plain terms states that plaintiff is to receive "one-half of all commissions received by Cheney on sales made to parties furnished by said Field for Kansas lands." If the contract was intended to mean one-half of all commissions remaining after payment of all expenses attendant on the business it does not so read, and the court was not au-

thorized to read that language or its substance into the contract. Again, it is perfectly clear from the evidence that the jury in arriving at the amount of their verdict did allow the defendant for all the expenses proven, the $175.

The seventh, eighth and ninth assignments are that the verdict is contrary to the law and the evidence. The tenth and eleventh assignments are the overruling the motion for new trial and entering judgment. These may be considered together. Upon the motion of the defendant the court had ruled plaintiff to file a bill of particulars, and the plaintiff in compliance with such order filed the following, to which no objection was made by defendant:

"Thomas H. Cheney, Dr., to James H. Field.

To one-half commissions on 1,249 acres of land
  sold by Thomas H. Cheney to Temple & Reeve
  and to A. L. Nunes, Robert Nunes and Jasper
  Boardman. Customers furnished by plaintiff . . $624 50
By cash paid by Cheney . . . . . . . . . . . . . . . . . . . . . . . 312 25

    Balance due . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $312 25"

The above mentioned contract between plaintiff and defendant was introduced in evidence by plaintiff, and A. L. Nunes, Robert Nunes and R. B. Temple of the firm of Temple & Reeve, W. P. McLoud and the plaintiff were witnesses in behalf of plaintiff. A. L. and Robert Nunes testified that it was at plaintiff's solicitation they and Boardman went to defendant's office and commenced their negotiations which ended in the purchase of lands through him and Temple & Reeve, whom defendant was representing, the three together buying 1,249 acres of land, and that all the lands were paid for. Temple testified to the purchase of the 1,249 acres of land by the Nunes and Boardman, of Temple & Reeve, and that Temple & Reeve paid defendant therefor one dollar per acre; that the transaction was had under their contract with the defendant and that defendant had requested him to tell the plaintiff that he, the defendant, had been paid only fifty cents per acre, but he, Temple, refused so to do. McLoud's testimony has been already sufficiently stated. The plaintiff's testimony was

that he and defendant entered into the contract offered in evidence; that he made his office with defendant; was nearly all the time on the street and in the country working under his contract; that he met and solicited the Nunes and Boardman to buy lands and took them to defendant's office on that business; that they bought the lands, 1,249 acres; that on April 10, 1902, defendant told him that he, defendant, had received fifty cents per acre; that Temple & Reeve had scaled his contract down fifty cents; that he settled with defendant on-that basis on his statement and· not knowing to the contrary; that he afterwards learned from Temple that defendant was paid one dollar per acre; that at the time of such settlement defendant figured on a sheet of paper. The paper was produced and proven and shows on the left side a calculation at one dollar per acre on the lands sold, the division of that sum in two, that is at fifty cents per acre, and the division of the last quotient by two, showing the amount coming to defendant and plaintiff each, $312.25. On the right side of the sheet is a list of dates and items of various sums of money, some of cents and some of dollars, the sum of which is $121.65, which, taken from $312.25, left $190.60, as appears on the left side of the paper. The plaintiff further said the defendant then gave him a check on the settlement. The check afterwards introduced by defendant was for $190.60 and reads " in full of accounts to date." The sum of $121.65 was moneys paid to plaintiff at various times and concerning which there is no controversy.

Defendant and his daughter, Nellie Cheney, testified on the defense. Nellie Cheney says that she was her father's stenographer; that she was present when plaintiff and defendant were figuring at settling; that defendant figured up all expenses and amount advanced on the Nunes and Boardman sales; plaintiff said it was all right; that he knew expenses were heavy and he was willing to pay his half; that defendant went over the books and the expense account and the money advanced and plaintiff said he had kept track of it in his mind and that it was all right.

Cheney v. Field.

Defendant testified that he received one dollar per acre from Temple & Reeve on the sales in question; that he had a settlement with plaintiff; that he figured up all expenses on one sheet of paper and amounts advanced on another and that plaintiff carried off both sheets with the check defendant gave to him on the settlement; that he explained to plaintiff that after taking out expenses there was left net, fifty cents per acre; that plaintiff said it was all right; that he did not tell plaintiff that Temple & Reeve had scaled his commission to fifty cents per acre; that he had his books showing expenses in detail but he and plaintiff had gone over them when they settled.

Plaintiff, recalled, said that Nellie Cheney was not present when he and defendant settled; that the contract and the paper with the figures on it were all the papers defendant gave him or that he knew anything of.

We have stated the evidence somewhat in detail because a large part of defendant's argument is with reference to alleged expenses and settlement of accounts. Where is the proof as to expenses other than the $170 which the jury allowed? Why did not defendant produce or attempt to produce it? It is evident there were no other expenses. The theory of cutting down commissions by expenses was probably devised after Temple told defendant he would not lie for him and tell plaintiff that he only paid defendant fifty cents per acre as commission.

Counsel for defendant say that plaintiff is estopped from denying that the settlement was in full because he accepted the check "in full of accounts to date," and further that he has not returned the money or offered to return it; and yet all the instructions they asked and all of which were given, contain the qualification that the settlement was made without fraud by the defendant and without mistake of fact. The instructions were correct; the argument is not. The cases cited by counsel are wholly impertinent to the proposition advanced.

Field is shown by the evidence to be a man of but little education; can scarcely read print. He belongs to that

unfortunate class of people who are compelled to rely almost wholly on the good faith and uprightness of their more fortunate fellows. The defendant attempted to defraud him; the jury discovered it from the evidence and declined to assist him.

The twelfth assignment questions the overruling of the defendant's demurrer to the amended declaration. After the demurrer was overruled the defendant pleaded the general issue; pleading over, waived the demurrer. The thirteenth is the sustaining of the demurrer to the defendant's plea. We think that plea good, and the court, having allowed the plea to be filed, should have overruled the demurrer, but no harm came to the defendant by the order. The evidence wholly fails to establish that plaintiff came within the terms of the ordinance of the city of Springfield relative to brokers, which was offered and admitted in evidence.

This opinion occupies more space than the case is worthy of. The verdict of the jury was approved by the trial court; we approve it and the judgment rendered thereon, which is affirmed.

*Affirmed.*